## JOHN J. STUMBO et ux., Respondents, v. DULUTH ZINC COMPANY, Appellant.

Kansas City Court of Appeals, June 8, 1903.

1. **Master and Servant:** PLACE OF WORK: INSTRUCTIONS: ABSTRACTION.  The master is only required to use ordinary care to provide a reasonably safe place for the servant to work; and though an instruction is the subject of criticism where it deals in abstractions, yet if it properly applies the law to the evidence it does not constitute reversible error.

2. ———: ———: ———. ASSUMING CARE.  An objection that an instruction assumes that the deceased was killed while in the exercise of ordinary care is held untenable.

3. **Damages:** PERSONAL INJURY: MEASURE OF PARENTS' RECOVERY.  The measure of recovery by parents for the death of a son is the reasonable value to them of the services of their son, which is held as definite as the expression, "The probable amount they would have received from his services."

4. ———: EXCESSIVE VERDICT.  The evidence relating to the services of a son is reviewed, and the verdict is held not excessive, since two juries and the trial judge so regarded it.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds*, Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

(1) By the instruction the jury was told that it was the absolute duty of the defendant to furnish a safe place for the deceased to work in. Its duty in that behalf was simply to use reasonable care to keep its mine in a reasonably safe condition, regard being had to the necessary dangers incident to the character of the work prosecuted. Bradley v. Railroad, 138 Mo. 293; Higgins v. Railroad, 43 Mo. App. 547; Blanton v. Dold, 109 Mo. 64; Friel v. Railroad, 115 Mo. 503; Bohn v. Railroad, 106 Mo. 429; Berning v. Medart, 56 Mo. App. 443. (2) By this instruction also the court assumed that the deceased was killed "while he was in the exercise of ordinary care." This was one of the vital issues of the case and should have been fairly submitted to the jury. 2 Am. and Eng. Ency. Pl. and Pr., p. 116; Fullerton v. Fordyce, 121 Mo. 1; Hull v. St. Louis, 138 Mo. 618; Peck v. Ritchey, 66 Mo. 114; State v. Mason, 96 Mo. 599; Railroad v. Shelton, 66 Ill. 424; Clough v. Whitcomb, 105 Mass. 482. (3) The jury are told that the measure of plaintiff's damages was the reasonable value to them of the services of their son. Whereas the true measure of their damages was the probable amount they would have received from his earnings during minority less necessary expenses of board, lodging, etc. Leahy v. Davis, 121 Mo. 227; Hurt v. Railroad, 94 Mo. 255; Parsons v. Railroad, 94 Mo. 286. (4) The damages assessed by the jury are so grossly excessive as to show beyond question that the jury were guilty of misconduct or were governed by passion and prejudice instead of law and evidence.

*H. W. Curry* and *T. J. Roney* for respondents.

(1) Plaintiffs' instruction number one, read in connection with defendant's instructions numbers one and three, properly declare the law. Knight v. Sadtler L. & Z. Co., 91 Mo. App. 579; Bradley v. Railroad, 138 Mo. 307-308; Grocer Co. v. Frick, 73 Mo. App. 132. (2) Instruction number two properly declares the measure of damages and is correct. Schultz v. Moon, 33 Mo. App. 341-342; Owen v. Brockschmidt, 54 Mo. 285; Hennessy v. Brewing Co., 145 Mo. 104. (3) "In no case will a verdict be set aside by this court because excessive or insufficient unless it be such as bears evident marks of prejudice, passion or corruption." Leahy v. Davis, 121 Mo. 234; Shultz v. Moon, 33 Mo. App. 341; Parsons v. Railroad, 94 Mo. 286; Leahy v. Davis, 121 Mo. 233; Railroad v. Rush, 127 Ind. 545; Railroad v. Delaney, 82 Ill. 198.

BROADDUS, J.—The plaintiffs, father and mother of Francis Stumbo, bring this action for damages alleged to have been sustained by them by reason of the death of their said son while in the employ of defendant. It was admitted that at the time of his death he was earning two dollars per day; and there was evidence that the son assisted his mother in the work about the house; and that his earnings mostly went to the family. There was evidence that the son was healthy, industrious and intelligent; and that he lacked two years and six months of obtaining his majority at the time of his death, which occurred on the 27th day of August, 1900. The plaintiff was in the employ of defendant as miner, and it was alleged that he came to his death by reason of defendant's negligence. There was evidence tending to sustain and rebut the allegation. Defendant also introduced evidence to show that deceased frequented a gambling house and was inclined to spend his money foolishly, and to gam-

ble; and that deceased was guilty of contributory negligence.

The jury returned a verdict for plaintiffs in the sum of $2,118. The defendant filed motions for new trial and in arrest of judgment, which the court overruled. But before rendering judgment the court ordered plaintiff to enter a remittitur of $618 of this verdict. The plaintiffs refused to enter the remittitur. The court, however, gave judgment for only $1,500—$618 less than the amount of the verdict. Defendant appealed.

Defendant contends that certain instructions given on behalf of plaintiffs were erroneous and that the verdict of the jury was excessive.

Instruction number one given for the plaintiffs is as follows: "It was the duty of the defendant to furnish plaintiff's son a reasonably safe place in which to work. If you shall believe from the evidence that, by reason of the condition of the roof in the mine, the place where plaintiff's son was working was not a reasonably safe place in which to work, but dangerous; and if you shall further believe from the evidence that such dangerous condition was known to the defendant, or by the exercise of ordinary care on its part such dangerous condition would have been known to the defendant, and that plaintiffs did not know of such dangerous condition; and if you shall further believe from the evidence that, by reason of such dangerous condition, the roof of said mine fell upon and killed plaintiff's son while he was in the exercise of ordinary care on his part, then you should return a verdict for the plaintiffs."

One of the objections to the instruction is that it made it the absolute duty of the defendant to provide a reasonably safe place for the deceased to work, whereas the law only required it to use ordinary care to provide such a place. It is true, therefore, that the criticism is well founded, and if the after-words of the instruc-

tion did not cure the error, it would perhaps be misleading. The part objected to is a mere abstract statement of the law which may be disregarded if the instruction in the succeeding parts applies the law properly to the proof. We think it does, as follows: "If the jury shall believe from the evidence that by reason of the condition of the roof in the mine, the place where plaintiff's son was working was not a reasonably safe place in which to work, *but was dangerous;* and if you shall further believe from the evidence that such dangerous condition was known to defendant," etc. A similar instruction was held good in Bradley v. Railroad, 138 Mo. l. c. 307, 308, and in Knight v. Sadtler L. & Z. Co., 91 Mo. App. l. c. 579.

The further objection is made to said instruction that "the court assumed that the deceased was killed while he was in the exercise of ordinary care." This objection is wholly untenable. The instruction in plain language requires the jury to find the deceased was in the exercise of ordinary care.

Instruction number two, given as a guide to the jury in estimating plaintiff's damages, was objected to because it held that the measure of plaintiff's damages was the reasonable value *to them* of the services of their son, whereas the true measure of damages was the probable amount they would have received from his earnings during minority, less necessary expenses of board and lodging, etc. In Leahy v. Davis, 121 Mo. 227, it was held that the measure of the parent's damages for the loss of a minor child was "the value of the child's services during his minority, and burial and other expenses, if any, incurred by his death or sickness, less the expense of his support and maintenance during that time." In Parsons v. Railway, 94 Mo. l. c. 296, the court, in passing upon a similar question, used the following language: "An intelligent jury, from common experience, may determine approximately, in any given case, what would compensate a

parent for all pecuniary losses sustained by reason of the death of the minor child, but unless they are distinctly informed that such compensation is to be limited to the value of the child to its parents during the period of its minority,'' etc.   This language is like that used in the instruction.   There is no real difference in the language of the two cases last cited.   They both practically mean the same thing.   And it seems to us that the term ''reasonable value to the plaintiffs of the services of the son'' would be, certainly, as definite as the ''*probable* amount they would have received,'' etc.

The defendant further contends that the verdict of the jury was excessive.   The trial court entertained the same opinion and reduced it to the amount of $1,500, which, in its opinion, was not excessive.   It seems that there was a former verdict in this case in favor of plaintiffs for $1,500, which was set aside for some cause not stated in the record.   It thus appears that in the opinion of two juries and the judge who tried the case that the verdict as it now stands is not excessive.   It not appearing that the jury was actuated by passion or prejudice, and as there is no charge that the judge was other than strictly impartial, we feel it a duty, under the circumstances, to defer to their judgment.

For the reasons given, the cause is affirmed.   All concur.